UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:14-CR-00013-TBR

UNITED STATES OF AMERICA                                                                                        Plaintiff,

v.

DEMARCUS LAMAR FUQUA                                                                                       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Demarcus Lamar Fuqua's Motion to Suppress, (Docket No. 26), to which the Government has responded, (Docket No. 30). A hearing was held on November 24, 2014, and the matter is now ripe for adjudication. For the reasons explained below, Fuqua's Motion will be denied.

### Factual Background

As detailed in the application for search warrant, the parties' briefing, and the suppression hearing, this matter arises from information provided to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") by a confidential informant. The informant relayed to ATF Special Agent Chad Foreman that Fuqua was trafficking significant quantities of narcotics in the Paducah and Princeton areas of Western Kentucky, with his supply originating in Texas. According to the informant, Fuqua had recently been arrested in Texas for transporting a large amount of marijuana. Fuqua's involvement in the Kentucky drug market, the informant said, stemmed from the arrest of his brother, Jerrold Fuqua ("Jerrold"), for violations of federal narcotics laws; when Jerrold was incarcerated, he left behind a robust trafficking business for Defendant Fuqua to assume.

The ATF's criminal records check revealed that Fuqua had previously been convicted of several felonies, including trafficking in cocaine, and was on parole for one of those charges. The records check also indicated that Fuqua had been arrested in Rockwall, Texas, on May 21, 2014, for felony possession of marijuana in an amount exceeding fifty pounds. A Rockwall police detective informed the ATF that Fuqua, along with Tabitha Prowell, had been found in possession of approximately eighty pounds of marijuana that Fuqua had obtained in Dallas, Texas. Law enforcement reports indicated that Fuqua and Prowell had attempted to conceal her involvement in the scheme.

On June 3, 2014, Special Agent Jason Murphy met with the informant, who conveyed that Fuqua and his brother, Jerrold, "had been partnered in selling narcotics for years," (Docket No. 26-3, Affidavit in Support of Probable Cause, at ¶ 10), and that he had personally observed Fuqua in possession of cocaine or cocaine base on numerous occasions in the past seven months. According to the informant, Fuqua used at least three different vehicles to transport narcotics, including a black Chevrolet Suburban. Investigators determined that a 2003 black Chevrolet Suburban was registered to Prowell at 611 Varmint Trace in Princeton, Kentucky, where they believed that Fuqua and Prowell resided. The same vehicle was previously owned by Jerrold Fuqua, now incarcerated.

The same day, the ATF conducted surveillance on Fuqua at 611 Varmint Trace and observed him place something in the Suburban, then leave. Officers later observed the same Suburban parked behind the 611 Varmint Trace address. A similar pattern was noted during the course of surveillance on June 6, 2014, after which investigators executed a federal tracking warrant on the Suburban, allowing them to monitor the driving patterns and frequent destinations of its drivers. In the course of this monitoring, investigators observed Fuqua make frequent stops near 611 Varmint Trace in a fashion consistent with narcotics trafficking.

According to the affidavit, on June 19, 2014, Fuqua reached out to the informant with instructions to meet him at Mayfair Apartments in Paducah, Kentucky. The informant observed Fuqua's Suburban in

the apartment's parking lot. Once inside, Fuqua allegedly gave the informant a baggie of cocaine powder to sell on Fuqua's behalf, later determined to weigh approximately 37.6 grams. The informant also stated that after Fuqua meted out cocaine to another individual, he discarded the wrappers of the cocaine bundles and instructed the informant to take the trash bag to the apartment complex's communal dumpster. Officers later recovered these wrappers, along with a baggie containing cocaine residue. On the same date, officers observed Fuqua switch vehicles at the apartment complex, exchanging a white Chevrolet Tahoe registered to Prowell for the black Suburban. Fuqua drove the Suburban to Princeton, where he stopped at several addresses—including 611 Varmint Trace—before again switching vehicles and returning to Paducah.

On June 20, 2014, investigators monitored the informant, who entered Fuqua's apartment in Paducah and repaid him $1,400.00 in prerecorded money for the amount of cocaine that Fuqua had given him the day before. Thereafter, Fuqua was observed driving from Paducah to Princeton, switching vehicles, and driving back to 611 Varmint Trace in Princeton.

Five days later, Special Agent Murphy authored an affidavit and application for search warrant for the residence at 611 Varmint Trace, as well as for a white Chevrolet Tahoe and the black Chevrolet Suburban. Based on this information, the United States Magistrate Judge found probable cause and issued a search warrant to recover various paraphernalia associated with illegal narcotics at 611 Varmint Trace, as well as the vehicles. The warrant was executed on July 7, 2014.

## Analysis

In his Motion to Suppress, Fuqua argues that all evidence originating from the search of 611 Varmint Trace in Princeton, Kentucky, should be excluded. In addition to his broad assertion that the search was unreasonable, Fuqua levies a three-pronged argument as to why the evidence recovered a result of the search should be excluded. First, he contends that the affidavit supporting the search

insufficiently demonstrates probable cause. Fuqua next asserts that the information within the affidavit had become stale by the time of the search. Finally, he argues that law enforcement officers failed to include in the affidavit facts that would have indicated the lack of probable cause. The Court will consider each of Fuqua's arguments in turn.

    I.    **The affidavit supporting the search warrant adequately establishes probable cause.**

Fuqua first asserts that the affidavit upon which the search warrant was grounded was insufficient, rendering the search constitutionally insufficient. In evaluating an affidavit's sufficiency, the Court must determine "whether the magistrate judge had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citing *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). Probable cause requires "'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). That is, the affidavit must suggest "reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of property is suspected of crime." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 457, 556 (1978)). In making this inquiry, "[t]he issuing judge or magistrate 'may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept.'" *United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003) (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (1996)).

Affidavits are commonly drafted by "nonlawyers in the haste of a criminal investigation"; as such, the Supreme Court has recognized that "technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." *Illinois v. Gates*, 462 U.S. 213 (1983). Rather, "the affidavit should be reviewed in a commonsense rather than hypertechnical manner, and the

4

court should consider whether the totality of the circumstances supports a finding of probable cause rather than engaging in line-by-line scrutiny." *Woosley*, 361 F.3d at 926 (citing *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)). The district court tasked with this determination must afford "great deference" to the magistrate's probable cause determination, reserving it "only if the magistrate arbitrarily exercised his discretion." *Id.*

Although Fuqua argues that this warrant affidavit does not survive substantial basis review, the Court cannot agree. Fuqua contends that the affidavit establishes only a tenuous connection between the residence at 611 Varmint Trace and the alleged criminal activity. However, "the affidavit is judged on the adequacy of what it does contain, not on what it lacks, or in what a critic might say should have been added." *Woosley*, 361 F.3d at 924 (citing *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (en banc)). Under this forgiving standard, an affidavit remains constitutionally valid so long as it includes "sufficient corroboration that the [magistrate] could determine, under the totality of the circumstances, that probable cause existed." *Id.* at 927.

Here, the DEA special agent who composed the supporting affidavit was well trained, had years of experience in investigations of controlled substances, and was familiar with the typical practices and tactics used by persons who purchase and distribute illegal drugs. Review of the supporting affidavit indicates that the magistrate was provided with a detailed recounting of law enforcement's investigation of Fuqua. On multiple occasions, they observed Fuqua conducting counter-surveillance activities, including performing "burn moves" while driving in an effort to evade law enforcement surveillance; they further noted his habit of switching vehicles, swapping one for another as he drove between Paducah and Princeton. The affidavit also informed the Magistrate Judge that the informant had witnessed a purported drug transaction between Fuqua and an unknown individual and that Fuqua dispensed cocaine to be trafficked on his behalf by the informant himself. Special Agent Murphy noted that Fuqua frequently made stops to 611 Varmint Trace, including one following this transaction.

Considered individually, these facts would not establish probable cause. However, the Court looks to the totality of circumstances in such an analysis; this comprehensive view paints a picture of illegal activity—and if 611 Varmint Trace was not at its center, it was certainly a significant locale. Therefore, the Court finds that the warrant affidavit afforded the Magistrate Judge with a substantial basis for concluding that probable cause existed under the totality of circumstances.

**II.    The information within the affidavit was not stale at the time of the search.**

Fuqua next argues that the information provided in the affidavit was stale by the time of the search: although it details the informant's purported drug purchase on June 19, 2014, the affidavit was not sworn until June 25, 2014, and the search warrant was executed nearly two weeks later, on July 7, 2014. Accordingly, Fuqua argues that any probable cause dissolved in this eighteen-day period.

Because the probable cause analysis turns upon facts regarding a presently existing condition, the passage of time may cause once-existing probable cause to grow stale—and stale information cannot be used in a probable cause determination. *See United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (citing W. LaFave, *Search and Seizure* § 3.7 (3d ed. 1996)). Although "the length of time between events listed in the affidavit and the application for the search warrant . . . is clearly salient, [it] is not controlling." *Id.* It follows, then, that the search warrant does not yield an "'arbitrary time limitation within which discovered facts must be presented to a magistrate.'" *Id.* (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). The Court's analysis requires more than simply calculating the passage of days. Rather, the staleness inquiry hinges upon the "inherent nature of the crime." *Id.* (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)), and the Court considers the following factors:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?),
> (2) the criminal (nomadic or entrenched?),
> (3) the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), and

6

> (4) the place to be searched (mere criminal forum of convenience or secure operational base?)

*United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006) (citing *Spikes*, 158 F.3d at 923). These variables reflect that although a significant period of time may have elapsed since a defendant's last reported criminal activity, the Magistrate Judge may nonetheless infer that evidence of wrongdoing may remain on the premises. *Spikes*, 158 F.3d at 923.

Applying these factors to this case, the Court concludes that the information presented to the Magistrate Judge had not grown stale. The affidavit provided information obtained during a month-long investigation, originating with Fuqua's Texas arrest and ceasing on approximately June 20, 2014. As stated above, this investigation included a conveyance of 37.6 grams of cocaine from Fuqua to the informant, corroborated by drug packaging materials and cocaine residue found in the apartment complex dumpster. One day later, law enforcement oversaw the delivery of $1,400 to Fuqua, who was thereafter tracked to 611 Varmint Trace. The affidavit was sworn five days later.

The sequence of events outlined in the affidavit reveals that the informant's drug buy from Fuqua was unlikely an isolated event. Instead, the informant indicated that Fuqua's involvement was ongoing, and his history included a prior arrest for possession of significant amounts of narcotics. Of course, the informant was involved in only one drug buy, which was not controlled by the ATF. However, the ongoing observation of comings and goings from Fuqua's residences, along with his unusual driving patterns and vehicle swaps, established probable cause to believe that 611 Varmint Trace was an operational base for illegal drug trafficking. Moreover, the items to be seized included records, ledgers, and papers, all commonly used by drug traffickers to record their dealings; various drug paraphernalia; cellular phones; and U.S. currency. Each of these items is of lasting value—certainly not so transient as to be discarded after only five, or even eighteen, days. Finally, the affidavit contends that although Fuqua told his parole officers that he lived at 6600 Benton Road, he nonetheless frequented 611 Varmint Trace.

The affidavit suggests that 611 Varmint Trace served as Fuqua's "stash house," allowing him to store narcotics, drug paraphernalia, and drug proceeds free of his parole officer's random visitations.

Consequently, it is reasonable to conclude that evidence of illicit activities would remain at the residence five days after the events recounted by the informant. *See United States v. Moore*, 661 F.3d 309, 313-14 (6th Cir. 2011) (holding that a "period of less than five days between the [informant's] information about the presence of drugs and the application for and execution of the warrant does not make the information stale" when "warrant implies that the [searched] apartment is a base of drug trafficking."). Moreover, Fuqua identifies no changing circumstances that would have nullified probable cause between the issuance of the search warrant and its execution. This similarity of facts, coupled with the ongoing nature of the suspected criminal acidity, supports the continued existence of probable cause. Therefore, under these circumstances, the delay in the issuance and execution of the search warrant does not render the information contained in the affidavit sale, nor does it invalidate the search warrant.

Moreover, any hesitation that the Court may have regarding the existence of probable cause is resolve by the Government's reliance upon the good-faith exception. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court explained that when an officer had an objectively reasonable reliance on a warrant later found to be lacking in probable cause, the evidence will not be excluded. *Id.* at 922. This exception results from common-sense principles: suppression of evidence is intended to safeguard Fourth Amendment rights by deterring Fourth Amendment violations. *See id.* at 906. An officer who conducts a search in reasonable reliance upon a warrant later found to be invalid, though, has committed no wrong to be deterred. *See id.* at 919. Because no deterrence is needed, the Court need not suppress evidence arising from a search conducted in good faith. *See id.* at 918-21.

*Leon* identified four situations in which an officer's reliance on a subsequently invalidated search warrant *could not* be considered objectively reasonable: (1) when the warrant is issued on the basis of an affidavit that the affiant knows contains false information; (2) when the issuing magistrate abandons his

neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid. *Id.* at 914-23. The *Leon* bar, then, is not a particularly high one: the Sixth Circuit has applied the good-faith exception in cases with an affidavit containing "a minimally sufficient nexus between the place to be searched to support an officer's good faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *United States v. West*, 520 F.3d 604, 610 (6th Cir. 2008) (quotations omitted). The Court's determination of good-faith reliance is bound by the four corners of the affidavit; accordingly, the Court cannot consider information that officers may have obtained from other sources but that does not appear in the affidavit. *See United States v. Laughton*, 409 F.3d 744, 751-52 (6th Cir. 2005).

Here, Special Agent Murphy acted in reasonable reliance upon the Magistrate Judge's finding of probable cause to search 611 Varmint Place. Even if the facts provided in the affidavit had adequately demonstrated probable cause, they were not so vague as to be conclusory or meaningless. The affidavit was not utterly lacking in facts connecting the residence to the criminal activity; rather, it articulated Fuqua's frequent visits to the residence and suspicious activities nearby, as well as the fact that the Chevrolet Suburban was registered to that address. These facts are sufficient to establish the minimal nexus required to apply the good faith exception. The exclusionary rule will not bar the admission of the evidence found as a result of the search warrant.

### III.    A *Franks* challenge concerning allegedly omitted facts is not warranted.

Finally, Fuqua contends that officers failed to include several facts that would have demonstrated a lack of probable cause. Specifically, Fuqua alleges in a separate affidavit, (Docket No. 26-2), that officers knew or should have known that he was incarcerated until December 23, 2013; meanwhile, his brother, Jerrold, began serving a lengthy sentence in 2011, over two years before Fuqua's own release. All told, Fuqua says, at least one of the brothers has been incarcerated for the past fourteen years, leaving

9

them little opportunity to collaborate to sell drugs, as the affidavit alleges. Fuqua also emphasizes an attempted controlled buy that failed when the informant's recording equipment suddenly malfunctioned. He notes that the informant himself occasionally operated the black Suburban. Finally, Fuqua contends that the informant had provided false or misleading information in other cases. All of this information, he says, would have cast doubt upon the existence of probable cause had law enforcement not omitted from the affidavit.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court established that evidence seized as a result of the execution of a search warrant may be suppressed if the warrant was obtained on the basis of an affidavit that contained misrepresentations.

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was induced by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155-56. The *Franks* principles also guide courts when an officer has allegedly omitted information from his affidavit, rather than including falsehoods therein. Under such circumstances, the Sixth Circuit has explained:

> Although material omission are not immune from inquiry under *Franks*, we have recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information. *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990). This is so because an allegation of omission "'potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.'" *Id.* (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)).

10

> If the defendant does succeed in making a preliminary showing tha the government affiant engaged in "deliberate falsehood" or "reckless disregard for the truth" in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists. *United States v. Bonds*, 12 F.3d 540, 568 n.26 (6th Cir. 1993).

*United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). Furthermore, the Sixth Circuit has emphasized that the omission of material information from an affidavit will result in the suppression of evidence "only in rare instances." *Mars v. City of Dayton*, 134 F.3d 809, 918 (6th Cir. 1998).

Fuqua's assertions would justify further examination into the veracity of the informant; if correct, the facts he mentions would have deepened the Magistrate Judge's examination and may have given him pause. However, the probable cause analysis tasks the magistrate judge with "simply mak[ing] a practical, common-sense decision whether, given all the facts and circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Even with a more comprehensive affidavit, the Magistrate Judge could have reasonably determined that probable cause justified the search warrant, particularly given officers' own observations. Moreover, Fuqua has failed to demonstrate that Special Agent Murphy deliberately or recklessly omitted such information in an attempt to deceive. Accordingly, the Court must reject Fuqua's *Franks* challenge.

## CONCLUSION

The Court having considered the parties' briefings and their arguments presented at the hearing, in light of the above analysis, the evidence found as a result of the search warrant need not be suppressed. Therefore, IT IS HEREBY ORDERED that Fuqua's Motion to Suppress, (Docket No. 26), is DENIED.